## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT LEE-LAMAR REYNOLDS,

      Petitioner,
                              Case No. 18-cv-13237
                                      Hon. Matthew F. Leitman
v.

MELINDA BRAMAN,

      Respondent,
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) DENYING PETITIONER'S MOTION FOR REMAND FOR AN EVIDENTIARY HEARING (ECF No. 32), (3) DENYING A CERTIFICATE OF APPEALABILITY, AND (4) GRANTING LEAVE TO APPEAL _IN FORMA PAUPERIS_

Petitioner Robert Lee-Lamar Reynolds is a state prisoner in the custody of the Michigan Department of Corrections. On October 16, 2018, Reynolds filed a *pro se* petition for a writ of habeas corpus in this Court. (*See* Pet., ECF No. 1.) In the petition, Reynolds seeks relief from his convictions of two counts of conspiracy to deliver 50 or more but less than 450 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iii) and Mich. Comp. Laws § 750.157a, conspiracy to deliver less than 50 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv) and Mich. Comp. Laws § 750.157a, delivery of less than 50 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv), delivery of 50 or more but less than 450 grams of cocaine, Mich.

1

Comp. Laws § 333.7401(2)(a)(iii), and being a fourth habitual offender, Mich. Comp. Laws § 769.12. (*See id.*)

The Court has carefully reviewed the petition and concludes that Reynolds is not entitled to federal habeas relief. Accordingly, for the reasons explained below, the Court **DENIES** Reynold's petition.

## I

## A

A jury in the Wexford County Circuit Court convicted Reynolds of the above-described offenses in 2014. The Michigan Court of Appeals described the relevant facts as follows:

> In April of 2013, police officers executed a search warrant on the residence of Matthew Gray and Heather Sickles. They discovered evidence of drug distribution, including digital scales, marijuana, and seven one-gram packets of a powdery substance later identified as cocaine. Defendant's fingerprints and DNA were not discovered on any items in the house, but the testimony of several trial witnesses linked him to the drugs. Sickles explained that from approximately February 2013 until April 2013, defendant regularly delivered approximately 1020 grams of cocaine each week to the residence she shared with Matthew. The cocaine was prepackaged in one gram amounts and was ready for sale. Sickles and Matthew would sell these one-gram packages. Sickles explained that defendant delivered cocaine just a day or two before police executed the search warrant on her residence.

Greg Laurent testified that he regularly purchased cocaine from defendant. He began purchasing cocaine—usually one or two grams at a time-from defendant in "the fall of 2011" or the early part of 2012, and did so regularly until defendant was arrested in April 2013. Laurent estimated that he purchased approximately 2–3 grams of cocaine per week from defendant. Laurent testified that he would call defendant to arrange the sale, and then meet defendant at a location of defendant's choosing. During some of the purchases, "Matt" meaning Matthew Gray, was also present. Laurent normally purchased his cocaine directly from defendant; however, defendant instructed Laurent that if he was not around, Laurent was to purchase cocaine from Matthew. Laurent purchased cocaine from Matthew on several occasions.

Edward Gray, Matthew's brother, testified that he met defendant in 2011. Edward recalled that, while he and Matthew were living in their mother's house, defendant would come to the home every two weeks for approximately a year and sell cocaine out of the house with Matthew. He testified that on at least three occasions, defendant brought approximately 4 ounces of cocaine with him—roughly 113 grams—and that defendant and Matthew would package the cocaine for sale in one-gram baggies. Edward occasionally helped weigh the cocaine. Matthew, defendant, and Edward would sell the one-gram baggies around town.

*People v. Reynolds*, 2015 WL 7686989, at * 1 (Mich. Ct. App. Nov. 24, 2015).

Reynolds appealed his convictions in the Michigan Court of Appeals, and that court denied relief. *See id.* Reynolds then filed an application for leave to appeal in the Michigan Supreme Court, and that court denied leave. *See People v. Reynolds*, 882 N.W.2d 142 (Mich. 2016).

3

On August 8, 2017, Reynolds filed a post-conviction motion for relief from judgment with the state trial court.  The trial judge denied the motion on December 22, 2017. *See People v. Reynolds,* No. 13-10820-FH (Wexford Cty. Cir. Ct. Dec. 22, 2017) (ECF No. 16-22).  Reynolds did not file an appeal of the trial court's denial of his motion at that time.

## B

According to Reynolds, "around May 2018" he filed a petition for a writ of habeas corpus under Michigan law in the Jackson County Circuit Court. (Reynolds Reply Br., ECF No. 17, PageID.1540.)  In that state habeas petition, Reynolds raised what he claims was a jurisdictional challenge to his convictions. (*See id.*)   On November 27, 2018, the Jackson County Circuit Court denied Reynolds' state habeas petition. *See Reynolds v. Warden Joseph Barrett, Cooper Street Correctional Facility,* No. 18-1028-AH (Jackson Cty.Cir. Ct. Nov. 27, 2018) (ECF No. 16-24, PageID.1290-91).  It appears that Reynolds tried to seek review of the denial of his state habeas petition through a mandamus petition in the Michigan Court of Appeals. But Reynolds did not pay the required filing fee, and the Court of Appeals closed his case without any action taken. (*See* Michigan Ct. of Appeals Order, ECF No. 30-4; Michigan Ct. of Appeals Docket, Case No. 346569.)

**C**

On October 16, 2018, Reynolds filed his petition for writ of habeas corpus in this Court.[1] (*See* Pet., ECF No .1.)  Reynolds then asked the Court to hold the petition in abeyance so that he could return to state court and exhaust additional claims. (*See* Mot., ECF No. 3.)  The Court granted that motion on October 30, 2018. (*See* Order, ECF No. 7.)

Upon his return to state court, on December 12, 2018, Reynolds filed a delayed application for leave to appeal in the Michigan Court of Appeals challenging the state trial court's denial of his motion for relief from judgment.  The Michigan Court of Appeals dismissed the application as untimely under Michigan Court Rule 7.205(G)(3) because it was filed more than six months after the trial court denied Reynolds' motion. *See People v. Reynolds,* No. 346863 (Mich.Ct.App. Jan. 8, 2019) (ECF No. 16-24, PageID.1237).  Reynolds then sought leave to appeal in the Michigan Supreme Court, and that court denied leave. *See People v. Reynolds*, 931 N.W.2d 332 (Mich. 2019).

Reynolds thereafter returned to this Court, and the Court re-opened this action on August 19, 2019. (*See* Order, ECF No. 13.)  Reynolds now seeks habeas relief on the following grounds:

---

[1] As described above, at the time that Reynolds filed his federal habeas petition in this Court, his state habeas petition had not yet been decided.

5

I.      Whether [he] was improperly sentenced as a habitual offender because the state failed to comply with the requirements of the habitual offender statute. [The "Habitual Offender Claim."]

II.     Whether [he] was denied the effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution by both trial counsel and appellate counsel. [The "Ineffective Assistance Claim."]

III.    [Whether [t]he trial court erred in using misinformation and materially false assumptions as to the facts in misscoring variables associated with sentencing guidelines resulting in plain error. [The "Sentencing Claim."]

IV.     Whether the trial court had established personam and subject matter jurisdiction over [Reynolds], materially prejudicing [him]. [The "Jurisdiction Claim."]

(Pet., ECF No. 1, PageID.3-4.)

## D

On December 17, 2019, Respondent filed a motion to dismiss Reynolds' petition based on the alleged expiration of the statute of limitations. (*See* Mot. to Dismiss, ECF No. 15.)  The Court denied that motion in a written order. (*See* Order, ECF No. 28.)  The Court also ordered Respondent to file an answer addressing the merits of the petition, and Respondent did so. (*See id.*; *see also* Answer, ECF No. 29.)  Reynolds filed a reply brief on September 9, 2020. (*See* Reynolds Reply Br., ECF No. 31.)

6

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

Respondent first argues that all of Reynolds' claims are barred by AEDPA's one-year statute of limitations.   However, the statute of limitations does not constitute a jurisdictional bar to habeas review. Therefore, a federal court can, in the interest of judicial economy, consider a habeas petition even if a petitioner's claims are barred by a limitations period. *See Smith v. State of Ohio Dept. of Rehabilitation*, 463 F.3d 426, 429, n. 2 (6th Cir. 2006).  This Court need not resolve the dispute over the timeliness of Reynolds' claims because, as discussed below, the claims fail for other reasons independent of the statute of limitations.

7

# IV

## A

The Court begins with Reynolds' Habitual Offender Claim (habeas claim one), Sentencing Claim (habeas claim three), and Jurisdiction Claim (habeas claim four).  Respondent asserts that Reynolds is not entitled to relief on these claims because those claims are not, and cannot be, exhausted.  The Court agrees.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising the claim in federal court. *See* 28 U.S.C. § 2254(b) and (c). *See also Picard v. Connor*, 404 U. S. 270, 275-78 (1971).  "To be properly exhausted, each claim must have been fairly presented to the state courts. This includes a requirement that the applicant present the issue both to the state court of appeals and the state supreme court." *Id.* at 414 (internal quotation marks and citation omitted). *See also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (same).

Reynolds' Habitual Offender, Sentencing, and Jurisdiction Claims are unexhausted because he did not properly present those claims in the state appellate courts.  With respect to the Habitual Offender and Sentencing Claims, Reynolds raised those two claims in his post-conviction motion for relief from judgment in the state trial court.  The trial court denied Reynolds' motion on December 21, 2017. *See People v. Reynolds,* No. 13-10820-FH (Wexford Cty. Cir. Ct. Dec. 22, 2017)

(ECF No. 16-22).   Reynolds then had six months to file an application for leave to appeal that decision with the Michigan Court of Appeals.  *See* Mich. Ct. Rule 7.205(G)(3).  He did not do so.  Instead, he waited nearly a year (until December 22, 2018) to file his application, and the Michigan Court of Appeals then dismissed the application because it was not timely filed.  Because Reynolds failed to raise the Habitual Offender and Sentencing Claims before the Michigan Court of Appeals in a timely manner, the claims are unexhausted and cannot provide the basis for federal habeas relief.  *See e.g. Rupert v. Berghuis,* 619 F.Supp.2d 363, 367 (W.D. Mich. 2008) (explaining that habeas petitioner failed to exhaust his state remedies as result of his failure to file timely appeal to Michigan Supreme Court). *See also Black v. Ashley* (Table), 1996 WL 266421, at ** 1–2 (6th Cir. May 17, 1996) ("The fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely").

Reynolds raised the Jurisdiction Claim in his state court habeas petition.  But, as described above, after the state trial court denied that petition, Reynolds failed to properly seek review in the Michigan Court of Appeals or the Michigan Supreme

Court. (*See* Michigan Ct. of Appeals Order, ECF No. 30-4; Michigan Ct. of Appeals

Docket, Case No. 346569.)  Reynolds therefore did not exhaust this claim.[2]

Finally, Reynolds no longer has any available state court remedies with which

to exhaust the Habitual Offender, Sentencing, and Jurisdiction Claims.   Under

Michigan Court Rule 6.502(G)(1), a criminal defendant in Michigan is only

permitted to file one post-conviction motion for relief from judgment absent a

retroactive change in the law or newly discovered evidence (neither of which applies

here).  And as described above, Reynolds has already filed such a motion in the state

_____

[2] There may be an additional reason that Reynolds could not properly exhaust the Jurisdiction Claim through a state court habeas petition.  State habeas proceedings are generally not the proper venue for challenging a criminal conviction.  As the Michigan Court of Appeals has explained, a criminal defendant in Michigan "may not use a [state-court] habeas proceeding as a substitute for an appeal or to review the merits of his criminal conviction." *Moses v. Dep't of Corrections*, 736 N.W.2d 269, 273 (Mich. App. 2007).  Thus, a habeas petitioner does "not give the Michigan state courts a fair opportunity to address his claims by filing a state habeas corpus suit." *Nabors v. Waden*, 848 F.2d 192 (Table), 1998 WL 50635, at *1 (6th Cir. May 23, 1988) (affirming dismissal of habeas petition as unexhausted where petitioner had raised claim only in state habeas petition).  Reynolds counters that the filing of his state court habeas petition did exhaust this claim.  He argues that a convicted defendant may use a state habeas petition to raise a jurisdictional challenge to his conviction. *See Moses*, 736 N.W.2d at 273 (explaining that, under Michigan law, state habeas relief "is open to a convicted person in one narrow instance, ... where the convicting court was without jurisdiction to try the defendant for the crime in question")  And Reynolds says that he argued in his state habeas petition that there was a "radical jurisdictional defect" in his criminal proceedings that divested the Wexford County Circuit Court of jurisdiction over him. (ECF No. 30-2, PageID.1742.)  But the state court ruled that there was no jurisdictional defect in Reynolds' criminal case.  And, more importantly, Reynolds has not shown that the error he raised in his state habeas petition was of a jurisdictional nature.

courts.  Thus, Reynolds has no remaining state court remedies with which to exhaust his Habitual Offender, Sentencing, and Jurisdiction Claims.  Reynolds is therefore not entitled to federal habeas relief on these claims. *See Gadomski v. Renico,* 258 F. App'x 781, 783 (6th Cir. 2007) (affirming dismissal of habeas petitions where petitioners were "foreclosed" from challenging convictions on collateral review in Michigan state courts).

## B

In order to present unexhausted claims in a federal habeas petition, a petitioner must show cause for failing to exhaust the claims in state court and prejudice to his defense.  *See Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995).  Reynolds says that he has "cause" for his failure to exhaust because his appellate counsel rendered ineffective assistance by failing to raise the Habitual Offender, Sentencing, and Jurisdiction Claims on direct review.  The Court addresses Reynolds' standalone Ineffective Assistance Claim at length in Section V of this Opinion and Order.  For all of the reasons explained below, Reynolds has not shown that his appellate counsel was ineffective.  Therefore, because Reynolds has not established that this appellate counsel was ineffective, he cannot show the required cause for his failure to exhaust his claims.

For all of these reasons, Reynolds is not entitled to federal habeas relief on his Habitual Offender, Sentencing, and Jurisdiction Claims.

## V

Finally, the Court addresses Reynolds' Ineffective Assistance Claim (his second habeas claim). In this claim, Reynolds says that both his trial counsel and appellate counsel rendered ineffective assistance. Reynolds is not entitled to relief on either basis.

## A

The Court starts with Reynolds' claim that his trial counsel was ineffective. To understand this claim, some additional background is required. Reynolds was initially arraigned on a criminal information on November 12, 2013. (*See* Wexford Cir. Ct. Op. and Order, ECF No. 16-22, PageID.1045.) "Thereafter, the prosecution filed an amendment to the information" that added two new counts against Reynolds. (*Id.*, PageID.1046.) The Wexford County Circuit Court then "remanded the matter to the District Court for further preliminary examination" on the new charges. (*Id.*) On remand, the district court "arraigned [Reynolds] on the amended information." (*Id.*) In his habeas petition, Reynolds argues that his trial counsel should have objected to the addition of the two new charges at his second arraignment and to the conducting of a second preliminary examination. Reynolds has not shown that he is entitled to federal habeas relief on this basis.

Reynolds raised this claim on direct review in a supplemental *pro per* brief filed in the Michigan Court of Appeals, and that court rejected it:

12

"[I]t is the defendant's burden to prove that counsel did not provide effective assistance." *Heft*, 299 Mich.App at 80. "The defendant must overcome the presumption that the challenged action could have been sound trial strategy." *People v. Grant*, 470 Mich. 477, 485; 684 NW2d 686 (2004). "To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Heft*, 299 Mich.App at 80–81, citing *Strickland v. Washington*, 466 U.S. 668, 694; 104 S Ct 2052; 80 L.Ed.2d 674 (1984). "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Id*. at 81.

[….]

We also reject defendant's issues pertaining to counsel's performance in regard to various pre-trial matters. There is simply no merit to defendant's contention that trial counsel filed a "prosecutorial type motion" with regard to the information. Rather, counsel filed a motion to strike or amend the information to delete portions of the information regarding dates during which the alleged crimes occurred that were unsupported by testimony adduced at the October 14, 2013 preliminary examination. Any assertion by defendant that this motion somehow prompted the prosecutor to amend the information does not entitle defendant to relief. The prosecution was entitled to seek to amend the information, see MCR 6.112(H); thus, even assuming error on the part of trial counsel, such an assertion of error would not entitle defendant to relief. See *Heft,* 299 Mich.App at 80–81 (requiring a defendant to show prejudice in order to prevail on his claim of ineffective assistance of counsel). Moreover, defendant fails to convince us that the procedure employed in amending the information and conducting a second

13

preliminary examination was improper such that counsel should have or could have raised a successful objection.

Next, defendant argues that counsel was ineffective for failing to object to the addition of two charges against defendant, failing to demand that the prosecution submit physical evidence, and failing to move for severance of the new charges under MCR 6.120(C). Defendant does not explain what objections counsel should have made, and he failed to cite any authority stating that the prosecution needed physical rather than testimonial or circumstantial evidence to prove the charges. Instead, "[c]ircumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *Schumacher*, 276 Mich.App at 167. Moreover, defendant does not explain how these alleged failures prejudiced him. As to whether counsel should have moved to sever the charges, MCR 6.120(C) allows the defendant to move to "sever for separate trials offenses that are not related as defined in subrule (B)(1)." However, MCR 6.120(B)(1)(b) provides in relevant part that offenses are related if they are based on "a series of connected acts." Defendant's offenses were related because they stemmed from a series of connected acts, i.e. a continuous series of cocaine deliveries to the same locale using many of the same coconspirators. Thus, a motion for severance would have been denied, and defendant has not demonstrated ineffective assistance of counsel.

*People v. Reynolds*, 2015 WL 7686989, at ** 2, 9 (Mich. Ct. App. Nov. 24, 2015).

Reynolds has not shown that this ruling was contrary to, or an unreasonable application of, clearly established federal law. As the Michigan Court of Appeals explained, the addition of the two new charges and the conducting of the second preliminary examination did not violate Michigan law. Moreover, Reynolds has not shown that if counsel had raised an objection, it would have been meritorious or

14

made a difference in the outcome of his case.  And "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014).  Simply put, Reynolds has not shown that the Michigan Court of Appeals unreasonably rejected his ineffective assistance of trial counsel claim.  Reynolds is therefore not entitled to federal habeas relief on this claim.

## B

The Court next turns to Reynolds' claim that his appellate counsel rendered ineffective assistance.  The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  And "appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (*quoting Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Reynolds argues that his appellate counsel was ineffective when counsel failed to raise on direct review the Habitual Offender, Sentencing, and Jurisdictional claims that Reynolds now raises in his current habeas petition.  Reynolds has not shown that he is entitled to relief with respect to any of these claims.

15

**1**

Reynolds first argues that his appellate counsel should have raised the Habitual Offender Claim on direct review. According to Reynolds, the state trial court lacked the authority to sentence him as a habitual offender because the prosecution failed to provide him with the required pre-trial notice of that designation under Michigan law.

Reynolds first raised this claim in his motion for relief from judgment with the state trial court.[3] That court rejected it:

> Defendant does assert that his appellate counsel was ineffective in not raising [this] issue[] with the appellate courts … [but e]ach of the Defendant's claims for ineffective assistance of counsel and for relief as outlined above must be denied because there is no merit to the underlying claims as discussed herein. Further, trial counsel or appellate counsel cannot be determined to be ineffective for failing to raise meritless claims.

---

[3] In reviewing a claim under AEDPA, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F. 3d 487, 505 (6th Cir. 2010). Reynolds raised his ineffective assistance of appellate counsel claim in his post-conviction motion for relief from judgment. And as described above, Reynolds did not file a timely post-conviction application for leave to appeal the trial court's denial of that motion. The Michigan Court of Appeals rejected the application as untimely without reaching the merits of Reynolds' claims. The Michigan Supreme Court then denied Reynolds' application for leave to appeal in a form order without any discussion. Accordingly, this Court must "look through" these decisions to the Wexford County Circuit Court opinion denying the motion for relief from judgment, which was the last state court to issue a reasoned opinion on this claim. Because that court denied Reynolds' post-conviction ineffective assistance claim on the merits, AEDPA's deferential standard of review applies to that ruling. *See Moritz v. Lafler*, 525 F. App'x 277, 283 (6th Cir. 2013).

16

[….]

> Here, the Court finds that there is proof of service of the
> notice of intent to habitualize the Defendant contained on
> the record. That notice occurred at the original
> arraignment and at the second arraignment wherein the
> added counts were considered. The notice was identical in
> each case, and the acknowledgement of receipt of that is
> on the record by counsel for the Defendant, which satisfies
> the proof of service requirement contained in the statute.
> As a result, any claim that resentencing should occur for
> failure to make a proof of service has no merit, and
> therefore, trial counsel and appellate counsel could not be
> considered to be ineffective for failing to raise those
> issues.

(ECF No. 16-22, PageID.1043, 1046.)

Reynolds has not shown that this decision was contrary to, or an unreasonable

application of, clearly established federal law. More specifically, Reynolds has not

shown that the state trial court unreasonably determined that Reynolds received the

required habitual offender notice at both the initial arraignment and then again at the

second arraignment.  He has therefore failed to show that the trial court unreasonably

concluded that this claim lacked merit and that appellate counsel was not ineffective

for failing to raise the claim on direct appeal.  Reynolds is therefore not entitled to

federal habeas relief on the basis that his appellate counsel failed to raise the Habitual

Offender Claim on direct review.

**2**

Reynolds next argues that his appellate counsel should have raised the Sentencing Claim on direct review.  In this claim, Reynolds says that the state trial court used misinformation and false assumptions when calculating his sentencing scoring variables under Michigan law.  Reynolds insists that had the trial court accurately calculated his guidelines, he would have received a less severe sentence.

Reynolds raised this claim in his post-conviction motion for relief from judgment filed in the state trial court, and the trial court rejected it:

> The Defendant further asserts that trial and appellate counsel were ineffective for failing to challenge the scoring of the sentencing guidelines as to PRV 7, OV 14 and OV 15. Here, each of the sentence information reports (Counts I, Ill, IV and V) have 20 points scored for PRV 7. In each instance, PRV 7 is scored 20 points because of the concurrent convictions for the other three felonies. There is no factual dispute with respect to PRV 7 and not raising an objection to that scoring can not constitute ineffective assistance of counsel.
>
> ORV 14 was scored 10 points for each of the conviction counts, because the Court determined that the Defendant acted as a leader in a multiple offender situation. Defense counsel objected to the scoring of ORV 14, indicating that there was inadequate proof to support that he was the leader. The Court, based upon having heard the testimony at trial, as well as the Presentence Investigation Report, found that there was evidence that he was a leader in a multiple offender circumstance by a preponderance of the evidence. As a result, no error has occurred with respect to scoring of offense variable 14.

18

> Offense variable 15 was scored at 50 points for each of the convictions that involved delivery or conspiracy to deliver 50 or more grams but less than 450 grams of cocaine. OV 15 was scored at 5 points for the offence of delivery of less than 50 grams of cocaine. Here, the Defendant argues that there can be no proof of the deliveries because of the small quantities involved in the transactions. However, to the contrary, the jury was instructed as to the quantities that were necessary to constitute the convictions in question, and, therefore, each of the verdicts prove the amounts in question beyond a reasonable doubt as determined by the jury. There is no error in the scoring of offense variable 15.

(ECF No. 16-22, PageID.1046-1047.)

Reynolds has not shown that this ruling was contrary to, or an unreasonable application of, clearly established federal law.   As explained above, appellate counsel does not render ineffective assistance where counsel omits a claim on appeal that lacks merit. *See Shaneberger*, 615 F.3d at 452.   And Reynolds has not shown any errors in the calculation of his sentencing variables.   Accordingly, Reynolds has not shown that his appellate counsel had any basis to challenge the calculation of his (Reynolds') sentence.   Reynolds is therefore not entitled to federal habeas relief on this claim.

### 3

Finally, Reynolds argues that his appellate counsel should have raised the Jurisdiction Claim on direct appeal.   But, as described above, Reynolds himself raised that claim in a supplemental *pro per* brief filed in the Michigan Court of

19

Appeals.  And that court considered and rejected the argument on the merits. *See Reynolds*, 2015 WL 7686989, at *9.  Because the Michigan Court of Appeals fully considered this issue on direct appeal, Reynolds cannot show the required prejudice for his appellate counsel's failure to raise the issue. *See*, *e.g.*, *Donaldson v. Booker*, 505 F. App'x 488, 496 (6th Cir. 2012) (explaining that habeas petitioner could not "establish that he was prejudiced by the omission" of a claim from his appellate counsel's state appellate brief where petitioner "presented" the claim in a *pro se* supplemental brief and where "the Michigan Court of Appeals [was] aware of the issues he wished to raise").  Reynolds is therefore not entitled to federal habeas relief on this claim.

## VI

On September 9, 2020, Reynolds filed a motion seeking a remand so that the state trial court could hold an evidentiary hearing on his habeas claims.  A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F.3d 442, 459-60 (6th Cir. 2001).  In light of the fact that Reynolds' claims are meritless and/or not exhausted (and not capable of exhaustion), he is not entitled to a remand for the purposes of conducting an evidentiary hearing.

## VII

For all of the reasons stated above, the Court **DENIES** Reynolds' petition for a writ of habeas corpus (ECF No. 1).

The Court will also **DENY** Reynolds a certificate of appealability. In order to obtain a certificate of appealability, a habeas petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). In cases where the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. See *id.* at 484-85. Here, Reynolds has not met either threshold. The Court therefore declines to issue him a certificate of appealability.

Although this Court declines to issue Reynolds a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of

appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although Reynolds is not entitled to a certificate of appealability, he could take an appeal in good faith.  Therefore, Reynolds may proceed *in forma pauperis* on appeal.

### VIII

Accordingly, for all the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** Reynolds' petition for a writ of habeas corpus (ECF No. 1), (2) **DENIES** Reynolds' motion to remand for an evidentiary hearing (ECF No. 32); **DENIES** Reynolds a certificate of appealability, and (4) **GRANTS** Reynolds permission to appeal *in forma pauperis.*

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 4, 2020


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 4, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764

22